Approved: _Samuel Raymond_____
         SAMUEL L. RAYMOND
         Assistant United States Attorney

Before:   THE HONORABLE SARAH NETBURN
          United States Magistrate Judge
          Southern District of New York

**20 MAG 9524**

- - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA   :  **SEALED COMPLAINT**

    - v. -                     :  Violation of
                                 18 U.S.C. §§ 1956 and 2
ABDULLAH SHAFI,             :
                                 COUNTY OF OFFENSE:
         Defendant.      :  NEW YORK

- - - - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

    ALI AMHAZ-STRICKLAND, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

### COUNT ONE
### (Conspiracy to Commit Money Laundering)

    1.   In or about July 2019, in the Southern District of New York and elsewhere, ABDULLAH SHAFI, the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to violate the money laundering laws of the United States.

    2.   It was a part and an object of the conspiracy that ABDULLAH SHAFI, the defendant, and others known and unknown, would and did conduct and attempt to conduct financial transactions involving property represented to be the proceeds of specified unlawful activity, and property used to conduct and facilitate specified unlawful activity, to wit, visa fraud, in violation of Title 18, United States Code, Section 1546, with the intent to conceal and disguise the nature, location, source, ownership, and control of that property.

    (Title 18, United States Code, Section 1956(h).)

## COUNT TWO
### (Money Laundering)

3. On or about July 9, 2019, in the Southern District of New York and elsewhere, ABDULLAH SHAFI, the defendant, would and did conduct and attempt to conduct financial transactions involving property represented to be the proceeds of specified unlawful activity, and property used to conduct and facilitate specified unlawful activity, to wit, visa fraud, in violation of Title 18, United States Code, Section 1546, with the intent to conceal and disguise the nature, location, source, ownership, and control of that property.

(Title 18, United States Code, Sections 1956(a)(3)(B) and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

4. I am a Special Agent with the FBI, and have served in that position for more than three years. In that capacity, I have participated in investigations into money laundering, fraud, and other complex financial offenses, and have personally participated in the investigation of this matter along with agents with the FBI.

5. I make this Affidavit in part on personal knowledge based on my participation in the investigation; review of reports and other documents prepared by law enforcement agents and others; review of recorded conversations; and physical surveillance.

6. Throughout this Affidavit, where I assert that a statement was made, I was not the individual to whom the statement was made unless I specifically so state. Rather, information about the statement was provided by the specified law-enforcement officer or confidential source to whom I have spoken or whose reports I have read and reviewed. Such statements are among many statements made by others and they are set forth in substance and in part, unless otherwise indicated. Similarly, the information in this Affidavit resulting from surveillance, except where otherwise specifically indicated, does not set forth my personal observations, but rather was provided to me by other law enforcement officers who observed the events described, and/or to whom I have spoken or whose reports I have read.

7.   Furthermore, the facts and circumstances of this investigation have been summarized for the specific purposes of this Affidavit. I have not attempted to set forth the complete factual history of this investigation or all of its details. In making this Affidavit, I rely only on the facts stated herein.

## The Investigation

8.   Some time before June 2019, ("CS-1")[1] informed law enforcement that he knew a man ("CC-1") who CS-1 believed was involved in laundering money.  At various times before June 2019, at the direction of myself and other law enforcement officers, CS-1 represented to CC-1 in telephone and WhatsApp communications that CS-1 was engaging in visa fraud by obtaining visas for various individuals on false pretenses.  CS-1 represented to CC-1, in substance and in part, that, as a result of that visa fraud, CS-1 had obtained large quantities of cash, and that CS-1 needed a way to conceal the source and nature of that money so as to legitimize that the proceeds of CS-1's purported visa fraud for use in the United States.[2]  In a series of transactions before June 2019, CC-1 arranged for another person ("CC-2") to receive more than $100,000 cash from CS-1, which CS-1 represented as the proceeds of CS-1's visa fraud. CS-1 then told CC-1 or CC-2 to transfer the cash to specific accounts provided by CS-1 which were in fact controlled by law enforcement.  On each occasion, the requested money was transferred to the specified accounts, with CC-1 and CC-2 taking a small fee as payment.

9.   On or about July 7, 2019, CS-1 placed a recorded call to a number which CS-1 informed law enforcement belonged to

---

[1]   CS-1 has previously been arrested for violations of federal law, namely the federal immigration laws.  CS-1 is currently subject to an order of deportation, but has been cooperating with law enforcement in exchange for temporary relief from removal.  The information that CS-1 has provided in connection with this investigation has proven reliable, and has been independently corroborated by other evidence, including physical surveillance of the below-described meetings, and audio recordings.

[2]   When CS-1 and CC-1 speak, and when CS-1 and SHAFI spoke, they usually speak in Punjabi, and the conversations have been translated herein by native speakers.  I have reviewed draft translations of these conversations.

CC-1.  CS-1 told CC-1 that CS-1 had approximately $30,000 in cash, and asked if CC-1 had anyone who could pick up the money, because CC-2 was unavailable.  CS-1 asked that after CC-1 arranged to have someone pick up the money, that CC-1 transfer the money to specific accounts, which were in fact controlled by the FBI.  The next day, July 8, 2019, CC-1 contacted CS-1 and told CS-1 that a man named "Abdullah," later identified as ABDULLAH SHAFI, the defendant, would meet CS-1 on July 9 to receive the cash from CS-1; this call was recorded.  The same day, CC-1 provided CS-1 with a telephone number which CC-1 said belonged to "Abdullah" (the "Number").  Later on July 8, in a recorded call, CC-1 and "Abdullah" placed a conference call to CS-1.  CC-1 told CS-1 that "Abdullah" is CC-1's older brother and asks CS-1 to plan to meet Abdullah on July 9.  Abdullah told CS-1 that Abdullah would meet CS-1 the next day between 3 and 4 pm in Manhattan; CS-1 agreed.

       10.  On or about July 9, 2019, in a recorded call, CS-1 contacted the Number and spoke to Abdullah.  The two agreed to meet at a location in Manhattan (the "Meeting Location").

       11.  I participated in the surveillance of this meeting.  Before the meeting, law enforcement agents provided CS-1 with an audio recording device, and $30,000 in United States currency to conduct the below-described operation.  I participated in surveillance of the below-described operation.  I and other law enforcement agents observed a man driving a Toyota sedan with a specific New York license plate to the Meeting Location.  This man parked and exited the Toyota sedan, and went to the Meeting Location, where he met CS-1 and conversed for about half an hour.  Prior to participating in surveillance of the meeting, I reviewed a known DMV photograph of ABDULLAH SHAFI, the defendant, and the U.S. passport photograph of SHAFI, and I confirmed this was the same man who met with CS-1.  After a certain amount of time, SHAFI and CS-1 left the Meeting Location and both entered the Toyota sedan.  After the car drove for a few minutes, CS-1 exited, and the car drove away.

       a. I and the other members of the team debriefed CS-1 thereafter; according to CS-1, and as confirmed by the audio recording of their meeting, CS-1 discussed his visa fraud operation in detail with SHAFI.  Specifically, CS-1 told SHAFI that CS-1 refers people with difficult immigration cases to a corrupt government official, who illegally provides visas for

      a fee of $25,000, of which CS-1 receives 10% as a referral fee.

   b. When SHAFI and CS-1 returned to SHAFI's car, CS-1 gave SHAFI the $30,000 which had been provided by law enforcement, and SHAFI told CS-1 to talk to CC-1 if CS-1 wants to provide more money.  In SHAFI's presence, CS-1 called CC-1 to confirm that CS-1 had given $30,000.  CS-1 then exited the car.

   c. I have reviewed bank and other records which show that soon after July 9, money entered the accounts controlled by the FBI, in an amount consistent with the previous operations involving CC-1 and CC-2 whereby the two would take a fee for the transfers.

WHEREFORE, deponent respectfully requests that a warrant be issued for the arrest of ABDULLAH SHAFI, the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

/s authorized electronic signature
_____
ALI AMHAZ-STRICKLAND
Federal Bureau of Investigation

Sworn to me through the transmission
of this Affidavit by reliable electronic means,
pursuant to Federal Rules of Criminal Procedure
41(d)(3) and 4.1, this 8th day of September, 2020 .

_____
THE HONORABLE SARAH NETBURN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

5